U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 1 7 2009

ROBERT H. SHEMWELL, CLERK
BY_____
    DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

WILLIAM A. STEGALL, SR. AND
H.E. MCGREW, L.L.C.

versus

GEORGE A. LOFTON AND PRO
FLO AEROBIC SYSTEMS, L.P.

CIVIL NO. 08-1470
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion to dismiss for lack of personal jurisdiction and improper venue filed by George A. Lofton ("Lofton") and Pro Flo Aerobic Systems, L.P. ("Pro Flo") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). See Record Document 5. Also before the court is a motion to remand filed by William A. Stegall, Sr. ("Stegall") and H.E. McGrew, L.L.C. ("McGrew"). See Record Document 11. Based on the following, Lofton and Pro Flo's motion to dismiss is **GRANTED** and Stegall and McGrew's motion to remand is **DENIED** as moot.

### I. BACKGROUND

#### A.   Introduction.

On August 22, 2008, Stegall and McGrew filed suit in the First Judicial District Court of Caddo Parish, Louisiana, seeking a declaratory judgment that Lofton and Pro

1

Flo breached a 2004 licensing agreement. See Record Document 1. On October 2, 2008, Lofton and Pro Flo removed the case to this court; they then filed a motion to dismiss, arguing that the exercise of personal jurisdiction over them would offend traditional notions of fair play and justice and that venue in the Western District of Louisiana would be inappropriate. See Record Document 5 at 2. Stegall and McGrew filed an opposition to the motion to dismiss to which Lofton and Pro Flo replied. See Record Documents 14 and 27.

Additionally, Stegall and McGrew filed a motion to remand, arguing that a forum-selection clause contained in the licensing agreement limits jurisdiction to the First Judicial District Court. See Record Document 11. Lofton and Pro Flo opposed remand, arguing, inter alia, that Pro Flo is not bound by the forum-selection clause. See Record Document 28. The issues, now briefed by both parties, are ripe for resolution.

**B.  Relevant Facts.**

On April 3, 2003, McGrew and Pro Flo entered into a licensing agreement (the "2003 agreement") whereby Pro Flo acquired a perpetual license to manufacture and sell a wastewater treatment system identical to McGrew's CajunAire Advanced 500 Wastewater Treatment System. See Record Document 5, Ex. A. The 2003 agreement authorized NSF International ("NSF"), a not-for-profit organization that develops standards for product certifications, to split and duplicate the existing file on the wastewater treatment system, allowing Pro Flo to avoid the cost of further NSF testing. In exchange, Pro Flo agreed to pay McGrew $5,000 and to purchase all

aerators to be incorporated into Pro Flo's manufactured wastewater treatment systems from McGrew under a price schedule set forth in the 2003 agreement. See id.

On September 14, 2004, Lofton[1] traveled from Texas to Shreveport, Louisiana to take delivery of the first set of aerators that Pro Flo purchased from McGrew. See Record Document 29, Ex. 1 at 3. At this time, Lofton signed a separate licensing agreement (the "2004 agreement") in his personal capacity. See id., Ex. C. The 2004 agreement provided that "[a]ny disputes arising out of or concerning this agreement shall be triable in the First Judicial District Court, Caddo Parish, Louisiana." Id.

During 2004 and 2005, Pro Flo sent numerous purchase orders to McGrew in Louisiana; McGrew shipped numerous aerators to Pro Flo in Texas. See id., Ex. 1 at 4. McGrew would submit invoices to Pro Flo, and Pro Flo would remit payments in the form of checks payable to McGrew. On or about May 30, 2006, Pro Flo was informed that a company called Mo-Dad, doing business as Cajun Aire, acquired McGrew. Although the relationship continued under the same terms, Pro Flo now made their checks payable to "Cajunaire 1." This arrangement lasted until August of 2007 when Stegall, a Mo-Dad representative, notified Pro Flo that Mo-Dad changed its name to Acquired Wastewater Technologies, L.L.C. ("AWT"). The relationship again continued under the same terms, with Pro Flo now writing checks to AWT. See id. at 5.

---

[1] Lofton and his wife are the only members of WTSC, L.L.C., which is the general partner of Pro Flo. Lofton and his wife are also the only limited partners of Pro Flo. See Record Document 31.

In early 2008, relations began to sour after Pro Flo received a letter from Stegall on AWT's letterhead explaining that AWT would now invoice a $50.00 premium per aerator. The premium would only be deducted if payment was received by the 10th day of the month following the date of the invoice. See id., Ex. D. According to Lofton, AWT then started unilaterally charging Pro Flo higher prices than those set forth in the 2003 agreement's pricing schedule. See id., Ex. 1 at 6. After paying the higher priced invoices under protest, Pro Flo filed suit against AWT and Mo-Dad in the 55th Judicial District Court of Harris County, Texas on July 25, 2008. See id., Ex. G. On August 19, 2008, the Texas district judge signed an order granting application for a temporary restraining order. See id., Ex. H. The district judge also ordered that a hearing be set for the following Monday, August 25, 2008. At the hearing, the parties entered into an agreement whereby Pro Flo would continue to purchase aerators from AWT at the higher price, albeit under protest and without waiving its right to seek a refund. Despite knowledge of the recently signed order and upcoming hearing, Stegall and McGrew filed the instant suit on August 22, 2008.

## II. LAW AND ANALYSIS

### A. Standard Of Review.

Under Rule 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 609 (5th Cir. 2008). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained

in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." Id. Similarly, under Rule 12(b)(3), courts "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F.App'x. 612, 615 (5th Cir. 2007) (citing Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004)).

B.  **Personal Jurisdiction.**

A "federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." Johnston, 523 F.3d at 609. Because Louisiana's long-arm statute extends to the limits of due process, courts need only determine whether subjecting a defendant to suit in Louisiana would offend the Due Process Clause of the Fourteenth Amendment. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 336 (5th Cir. 1999); La. R.S. 13:3201(B).

Federal due process requires that the plaintiff prove (1) that the non-resident defendants purposely availed themselves of the benefits and protections of Louisiana by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." See Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358

(5th Cir. 2001).

Specific jurisdiction exists when the non-resident defendant's contact with the forum state arises from, or is directly related to, the cause of action. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984). The non-resident defendant must have "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 243 (5th Cir. 2008).

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. See Helicopteros Nacionales, 466 U.S. at 414-19, 104 S. Ct. at 1872-74. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Submersible Sys., Inc. v. Perforadora Cent., S.A., 249 F.3d 413, 419 (5th Cir. 2001). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction. . . ." Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007).

"In cases involving contracts, the exercise of jurisdiction requires an evaluation of the following factors surrounding the contract and its formation: (1) prior negotiations between the parties; (2) contemplated future consequences of the

contract; (3) the terms of the contract; and (4) the parties' actual course of dealing." A & L Energy, Inc. v. Pegasus Group, 791 So.2d 1266, 1272 (La. 6/29/01); ICEE Distrib., Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 591-92 (5th Cir. 2003). "An individual's contract with an out-of-state party alone cannot establish minimum contacts in the home forum." A & L Energy, 791 So.2d at 1272; ICEE, 325 F.3d at 591-92.

Once a plaintiff has met the "minimum contacts" prong of the analysis, courts must consider whether the "fairness" prong of the jurisdictional inquiry is satisfied by analyzing following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental and substantive social policies. See Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994); Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987). At this point, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" de Reyes v. Marine Mgmt. & Consulting, Ltd., 586 So.2d. 103, 106 (La. 1991); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct. 2174, 2185 (1985). "Jurisdictional rules may not be employed in such a way as to make litigation so gravely difficult and inconvenient that a party is unfairly placed at a severe disadvantage in comparison to his opponent." de Reyes, 586 So.2d

at 106; Burger King Corp., 471 U.S. at 478, 105 S. Ct. at 2185.

1. **Pro Flo.**

In applying the foregoing principles of personal jurisdiction to Pro Flo, the court must examine the relationship between Pro Flo, the State of Louisiana, and this litigation. See Helicopteros Nacionales, 466 U.S. at 414, 104 S. Ct. at 1872. In their petition, Stegall and McGrew allege that Pro Flo breached eight separate sections of the 2004 agreement. See Record Document 1, Ex. A at 2. However, a simple reading reveals that Pro Flo was not a party to the 2004 agreement.

The first sentence of the 2004 agreement reads as follows: "**THIS LICENSING AGREEMENT** (the "Agreement") is executed and delivered as of 9-14-04, [between] George A Lofton, ("License Buyer") and H.E. McGrew, Inc. ("License Seller")." Record Document 29, Ex. C at 1. Lofton also signed the 2004 agreement "George Lofton, Personal." See Id. Based on the above contractual language, it is clear that Pro Flo was not a party to the 2004 agreement. Pro Flo was also certified and listed by NSF under only the 2003 agreement, not the 2004 agreement. See Record Document 27 at 8.

Stegall and McGrew seek a declaratory action based on the 2004 agreement, but there is an insufficient relationship between Pro Flo, Louisiana, and the 2004 litigation to support the exercise of personal jurisdiction. Accordingly, Stegall and McGrew have failed to meet their burden of establishing a prima facie case of

personal jurisdiction over Pro Flo.[2]

### 2. Lofton.

Stegall and McGrew also allege that Lofton breached eight separate sections of the 2004 agreement. See Record Document 1, Ex. A at 2. Lofton argues that the "Plaintiffs' claims did not "arise out of or relate to" Lofton and Pro Flo's contacts with the State of Louisiana, and any contacts Lofton and Pro Flo may have had with the State of Louisiana are unrelated to Plaintiffs' claims and thus insufficient to satisfy due process standards." Record Document 5 at 3-4.

As Lofton was a party to the 2004 agreement, this court must analyze the ICEE factors of "prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealings." ICEE, 325 F.3d at 591. First, there is no indication that Lofton ever negotiated with McGrew in his personal capacity before signing the 2004 agreement.

Second, it seems the contemplated future consequence of the 2004 agreement was that Lofton would incur personal liability in the event that Pro Flo breached the 2003 agreement. According to Lofton, he was told that the 2004 agreement is the same as the 2003 agreement, except that Lofton was "to sign and guarantee it personally." See Record Document 29, Ex. 1 at 3. The parties did not contemplate that Lofton would purchase aerators and manufacture wastewater treatment systems

---

[2]The court need not reach the issue of whether specific jurisdiction over Pro Flo could have been predicated upon Pro Flo's contacts with Louisiana arising out of the 2003 agreement, as Stegall and McGrew have not alleged violations arising therefrom.

9

in his personal capacity. Eventually, Lofton "became unconcerned about the 2004 Licensing Agreement" and "was lead [sic] to believe the signing of it was a nullity. . . ." Id. at 4.

Third, while the differing terms of the 2004 agreement indicate an intention to modify the 2003 agreement, the 2004 agreement does mandate reciprocal obligations between McGrew and Lofton.

Fourth and finally, there is no indication that Lofton and McGrew ever conducted business pursuant to the 2004 agreement. Lofton stated that he and McGrew "never closed in accordance with the 2004 Licensing Agreement, Article 4" and that he was "not certified and listed by NSF pursuant to the 2004 Licensing Agreement." Id. at 4.

Of the four ICEE factors, only the third favors this court's exercise of personal jurisdiction over Lofton individually. However, "the mere contracting with a resident of the forum state is not in itself sufficient to establish minimum contacts such that the forum state may exercise personal jurisdiction over the defendant." Brammer Eng'g, Inc. v. East Wright Mountain Ltd. P'ship, No. 08-30566, 2009 WL 150653, at *2 (5th Cir. Jan. 22, 2009) (unpublished) (citing Burger King, 471 U.S. at 478, 105 S. Ct. at 2185 (1985)). As such, this court finds that McGrew and Stegall have failed to meet their burden of establishing a prima facie case of personal jurisdiction over Lofton.[3]

---

[3]As this court has declined to exercise personal jurisdiction over Lofton and Pro Flo, Stegall and McGrew's motion to remand is moot.

## III. CONCLUSION

Based on the foregoing analysis, Stegall and McGrew failed to meet their burden of establishing prima facie cases of personal jurisdiction over Lofton and Pro Flo. Subjecting them to personal jurisdiction in Louisiana based upon the 2004 agreement would offend traditional notions of fair play and justice. As this court does not have personal jurisdiction over Lofton and Pro Flo, it need not reach the merits of Stegall and McGrew's motion to remand. Accordingly, Lofton and Pro Flo's motion to dismiss for lack of personal jurisdiction is **GRANTED** and Stegall and McGrew's motion to remand is **DENIED** as moot.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this _17th_ day of March, 2009.

_____
JUDGE TOM STAGG